# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

---

## UNITED STATES

**v.**

## Airman First Class ANTHONY R. MILANO
## United States Air Force

## ACM S32122

## 11 March 2014

Sentence adjudged 3 October 2012 by SPCM convened at Luke Air Force Base, Arizona. Military Judge: Joseph S. Kiefer (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 3 months, forfeiture of $900.00 pay per month for 3 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Terence S. Dougherty; and Gerald R. Bruce, Esquire.

Before

ROAN, MARKSTEINER, and WIEDIE
Appellate Military Judges

This opinion is subject to editorial correction before final release.

WIEDIE, Judge:

A special court-martial composed of a military judge sitting alone convicted the appellant, consistent with his conditional guilty pleas, of wrongful possession, use, and distribution of Oxycodone, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 3 months, forfeiture of $900.00 pay per months for 3 months, and reduction to E-1.

The appellant's conditional guilty pleas preserved for appellate review the military judge's denial of a motion to suppress evidence derived from an illegal search of the appellant. Before us, the appellant asserts: (1) The military judge abused his discretion when he admitted evidence derived from an illegal search; and (2) He is entitled to relief pursuant to *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), because the Government did not forward the record of trial for appellate review within the 30-day

post-trial processing standard established by *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). Finding no error that materially prejudices the appellant, we affirm.

*Background*

On 23 May 2012, at Luke Air Force Base, Arizona, Security Forces members Senior Airman (SrA) AE and Technical Sergeant (TSgt) MN responded to a report of an altercation in the base dorms. When SrA AE and TSgt MN arrived at the dorm, they were met by two additional Security Forces members, and all proceeded to the room where the alleged incident took place. TSgt MN knocked on the door and it was answered by Airman First Class (A1C) JB who appeared agitated and indicated the altercation was inside the bedroom of the appellant within the shared dormitory space.

TSgt MN knocked on the bedroom door and announced himself as a Security Forces member. When the appellant answered the door, TSgt MN observed another person in the room, A1C JTB. Upon entering the room, TSgt MN did not see weapons on either of the occupants, but did notice a broken knife on the bed although it was not within the reach of either the appellant or A1C JTB. TSgt MN did discern what appeared to be a red mark on the appellant's face.

SrA AE escorted the appellant to an exterior balcony area, accompanied by another Security Forces member. While SrA AE did not consider the appellant to be apprehended, the appellant was not free to leave. Based on his belief that the appellant may have been involved in an altercation, SrA AE conducted a pat down to determine if the appellant had a weapon or anything that could be used as a weapon. On the balcony, SrA AE directed the appellant to place his hands up against the wall and then proceeded to pat down the appellant. When SrA AE felt an item in the right front pocket of the appellant's Airman Battle Uniform (ABU) pants, he asked the appellant if he had anything in his pockets. The appellant denied having anything in his pockets. SrA AE proceeded to remove an orange, plastic pill bottle with white pills and no label from the appellant's pocket.

SrA AE continued to pat down the appellant and felt a large bulky object in the right cargo pocket of the appellant's ABU pants. SrA AE asked the appellant what was in the pocket and the appellant responded there was nothing in the pocket. SrA AE removed a blue object from the appellant's cargo pocket. Without any specific questioning about the item, the appellant identified the item as a pill crusher and asserted he needed it to crush pills to mix with his food in order to take them. SrA AE also found a hollowed out pen casing in the same cargo pocket.

At the same time, TSgt MN escorted A1C JTB to a common area in the shared dorm space. TSgt MN did not conduct a pat down of A1C JTB although TSgt MN later indicated, in hindsight, he felt he should have.

While still at the dorm, the appellant was asked about the contents of the pill bottle. The appellant indicated the pills were Percocet (i.e. Oxycodone). The appellant initially said he had a prescription, but later admitted he did not. The appellant was not provided with a rights advisement under Article 31, UCMJ, 10 U.S.C. § 831, prior to being questioned about the pills.

Another Security Forces member present at the scene noticed a white powdery substance on the dresser in the appellant's room. This information was relayed to another Security Forces member, who observed the white powdery substance after the appellant had been patted down, but before the appellant was transported to the Air Force Office of Special Investigations (AFOSI) for further questioning. The Security Forces members contacted AFOSI based on information indicating illegal drug use may be involved as such activity is within the investigative purview of AFOSI.

A1C JTB was asked, while still at the dorm, whether he had any information about the appellant's use of illegal drugs. A1C JTB provided information incriminating the appellant and was then released. A1C JTB was subsequently interviewed by AFOSI later that same day. When questioned by AFOSI, A1C JTB was advised of his rights in accordance with Article 31, UCMJ, and waived those rights. He provided both oral and written statements which implicated the appellant in illegal drug use.

The appellant was interviewed by Investigator RA and Special Agent (SA) DL from AFOSI. He was advised of his rights under Article 31, UCMJ, and waived those rights. The appellant made oral incriminating statements related to illegal drug use and also provided a written statement on an Air Force (AF) Form 1168. On the AF Form 1168, he initialed that he understood he had the right to remain silent, to consult with a lawyer, to request a lawyer at any time during the interview, and to stop the questioning at any time.

Near the end of the interview, four to five hours after the initial frisk, the appellant was asked for consent to search his dorm room, vehicle, and urine. He was advised, orally and in writing, that he had the right to either consent or refuse to consent to the searches, that anything found in a search could be used against him at a trial, and that without his consent no search could be conducted absent a search warrant or authorization. The appellant consented, orally and in writing, to the searches, which yielded, among other things, white pills, orange pill bottles, and white powder. The appellant's urine sample tested positive for Oxycodone.

ACM S32122

At trial, the appellant moved to suppress the evidence obtained from the search conducted of the accused's person as well as all derivative evidence therefrom, to include the appellant's and A1C JTB's statements both at the dorm and during subsequent questioning by AFOSI, the search of his vehicle, the search of his dorm room, the results of the urinalysis test, and A1C JTB's testimony at trial.

After receiving evidence and argument, the military judge granted the defense motion to suppress the evidence found on the appellant during the search at the dorm and the statements made by the appellant and A1C JTB at the dorm. Conversely, the military judge denied the defense motion to suppress the appellant's and A1C JTB's statements to AFOSI during subsequent questioning; denied the defense motion with respect to the fruits of the searches conducted pursuant to the appellant's oral and written consent provided during the AFOSI interview; concluded the evidence found during the search of the appellant's dorm room was admissible under the doctrine of inevitable discovery based on the Security Forces members' observation of the white powdery substance in the appellant's dorm room when they responded to the disturbance call; and, denied the defense motion with respect to A1C JTB's testimony at trial.

On appeal, the appellant challenges the military judge's denial of his motion to suppress the subsequent statements and evidence obtained in consent searches of the appellant's dorm room, vehicle, and urine.

"We review a military judge's decision to suppress or admit evidence for an abuse of discretion." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted). "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *Id.* (citations omitted).

Confessions and subsequent searches derivative of an earlier illegal search or seizure are generally inadmissible, even when preceded by a proper rights advisement. The fruits of a subsequent search and confession may still be admissible against an accused if the Government can establish the prior violation is sufficiently distinguishable from the later confession and consent to search. *See Brown v. Illinois*, 422 U.S. 590, 603-04 (1975); *United States v. Conklin*, 63 M.J. 333, 338 (C.A.A.F. 2006) ("Granting of consent to search may sufficiently attenuate the taint of a prior violation."). In *Brown*, the Supreme Court identified three factors "to determine if *Miranda* warnings were sufficient to remove the taint of an unlawful search and allow . . . a subsequent confession." *Conklin*, 63 M.J. at 338 (citing *Brown*, 422 U.S. at 603-04). The three factors are: "temporal proximity of the unlawful police activity and the subsequent confession, the presence of intervening circumstances, and, the purpose and flagrancy of the official misconduct." *Id.* Our superior court adopted this three-pronged approach in *United States v. Khamsouk*, 57 M.J. 282, 291 (C.A.A.F. 2002).

The question before this Court is whether the appellant's consent to search and waiver of Article 31, UCMJ, rights cured the earlier violation. Whether the taint of a prior violation was sufficiently attenuated is determined based on the facts of a particular case. *See United States v. Murphy*, 39 M.J. 486, 489 (C.M.A. 1994) (holding voluntary consent to a urinalysis was not tainted by an earlier, unwarned interrogation); *Khamsouk*, 57 M.J. at 293 (finding that consent was a voluntary act of free will and not the exploited product of an illegal search and, therefore, was sufficiently attenuated from the taint of the prior illegal search).

The military judge determined the appellant's consent to the searches and the statements provided to AFOSI by the appellant and A1C JTB were sufficiently attenuated from the illegal search of the appellant and questioning without a rights advisement that occurred when Security Forces responded to the disturbance call. The military judge noted a number of factors supporting his conclusion.[*] First, the request for consent and questioning of the appellant by AFOSI was done by different individuals than those present at the scene and at a different location. The appellant freely and voluntarily waived his rights and agreed to make a statement after being properly advised of those rights by AFOSI. The appellant was further advised of his rights concerning granting consent to the subsequent searches and voluntarily granted consent. The military judge further found that the AFOSI agents did not exploit the earlier seized items or statements made at the scene when questioning the appellant or requesting consent to search. While finding the earlier search illegal, the military judge did not find it to be egregious under the facts of this case.

With respect to the statements of A1C JTB to AFOSI and his ability to testify at trial, the military judge noted similar factors were involved. A1C JTB was not questioned by AFOSI immediately after the search at the dorm, but rather was permitted to leave the scene and was not questioned until hours later when contacted by AFOSI and asked to come in for questioning. A1C JTB was advised of his rights and voluntarily agreed to make a statement to AFOSI.

It cannot be said that "but for" the prior illegal search, AFOSI would not have questioned the appellant or A1C JTB or sought consent to search from the appellant. While lawfully responding to a call reporting a disturbance, a Security Forces member observed a powdery white substance on the dresser in the appellant's dorm room. This fact alone would have led Security Forces to at least suspect illegal drug use and justify further investigation.

Like the military judge, we agree that the relatively short passage of time (approximately four hours) between the illegal search and the subsequent questioning and

---

[*] In applying the first prong of the three-prong test from *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975), the military judge found the fact that a couple of hours passed between the initial search and the later statements to the Air Force Office of Special Investigations and consent to search supported exclusion of the evidence, but that all other factors supported admission of the evidence.

request for consent to search weighs in favor of excluding the evidence in question. However, also like the military judge, we agree the two other prongs of the *Brown* test favor admission of the evidence.

There were numerous intervening circumstances that served to attenuate the taint of the prior search. The subsequent questioning and request for consent were done by different law enforcement agents at a different location. Although these agents were aware of the fruits of the prior search, they did not exploit that knowledge in order to obtain a confession and consent to search from the appellant. Prior to making oral and written admissions to AFOSI, the appellant was advised of his rights under Article 31, UCMJ, and voluntarily waived those rights. Prior to consenting to the searches of his dorm room, vehicle, and urine, he was advised of his right to refuse consent. Furthermore, while the military judge held the frisk of the appellant conducted at the dorm to be an illegal search, such a search was not egregious under the circumstances. Security Forces was responding to a disturbance call. It was not outrageous conduct on SrA AE's part to conduct a pat down out of concern for his safety and that of his fellow Security Forces members and others present at the scene.

Based on the record before us, we find the military judge did not abuse his discretion in denying the appellant's motion to suppress the derivative evidence in question. A waiver of Article 31, UCMJ, rights and the granting of consent to search can attenuate the taint of a prior illegal search and questioning. The threshold question is whether the waiver of rights and granting of consent was voluntary and sought without exploitation of the prior illegal search. The military judge's findings of fact are not clearly erroneous, he applied the correct law in addressing the derivative evidence, and his decision was not outside the range of choices reasonably arising from the applicable facts and the law. His application of the *Brown* factors supports his conclusion that any taint from the prior search was sufficiently attenuated. As such, the military judge's ruling was a proper exercise of his discretion.

*Post-Trial Processing Delay*

In *Moreno*, our superior court established guidelines that trigger a presumption of unreasonable delay, including where the record of trial is not docketed with the service court within 30 days of the convening authority's action. *Moreno*, 63 M.J. at 142. Furthermore, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers the service appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *Tardif*, 57 M.J. at 224.

The appellant's three-day court-martial concluded on 3 October 2012. The convening authority took action on 21 December 2012. The appellant's case was docketed with this Court on 13 February 2013, 54 days after action. The appellant does not allege he suffered any prejudice as a result of the delay. Rather, the appellant asserts *Tardif* relief is warranted due to unreasonable and unexplained post-trial delay and that such relief is appropriate to "protect the military justice system's reputation."

Because these delays are facially unreasonable, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135-36. When we assume error but are able to directly conclude it was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). This approach is appropriate in the appellant's case. Having considered the totality of the circumstances and the entire record, we conclude that any denial of the appellant's right to speedy post-trial review was harmless beyond a reasonable doubt.

The 30-day post-trial processing standard established in *Moreno* is not, by any means, a particularly onerous processing goal. In certain cases, there may be reasons which justify exceeding this standard. In this case, however, the Government has offered no reason why it took 54 days from the date the convening authority took action to forward the appellant's record of trial to this Court for appellate review. We agree with the appellant that such delays are unacceptable. Unfortunately, this is not the first time this Court has been faced with this issue. We find ourselves repeatedly expending judicial effort addressing an issue that would not result but for a lack of attentiveness. Although we find that relief is not otherwise warranted, *Tardif*, 57 M.J. at 224, we offer what should serve as a wake-up call to Government counsel that this is not an issue this Court should once again be required to entertain.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court