# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.J. BRUBAKER, K.M. MCDONALD**
Appellate Military Judges

**UNITED STATES OF AMERICA**

**v.**

**GREGORY S. MAYO**
**FIRE CONTROL TECHNICIAN THIRD CLASS (E-4), U.S. NAVY**

**NMCCA 201400193**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 4 Mar 2014.
**Military Judge:** CAPT R.B. Blazewick, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southeast,
Jacksonville, FL.
**Staff Judge Advocate's Recommendation:** CDR N.O. Evans,
JAGC, USN.
**For Appellant:** CDR C. Eric Roper, JAGC, USN.
**For Appellee:** LT Amy Freyermuth, JAGC, USN; LT Ann E.
Dingle, JAGC, USN.

**28 April 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of one specification of receiving child pornography and one specification of possessing child pornography, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The military judge sentenced the appellant to confinement for

twenty months, reduction to pay grade E-1, a $2,000.00 fine, and a dishonorable discharge. In accordance with a pretrial agreement (PTA), the convening authority (CA) approved the twenty months of confinement, reduction to pay grade E-1, a $2000.00 fine, and a bad-conduct discharge. Also pursuant to a PTA the CA suspended six months of confinement.

The appellant's sole assignment of error (AOE) claims that the military judge erred by relying on the independent source and inevitable discovery exceptions to the exclusionary rule in deciding that the evidence derived from the appellant's password protected laptop was admissible.[1] We disagree.

After careful consideration of the record of trial, the appellant's AOE and the parties' pleadings, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ. Thus, we decline to grant relief.

## Background

The appellant was deployed aboard the USS ROBERT G. BRADLEY (FFG 49) when another Sailor, Information Systems Technician Second Class (IT2) R, also attached to the ship, accessed the ship's intranet (LAN) through his personal laptop. While searching the LAN's shared files for a movie to watch, IT2 R discovered a folder called "Rain," which contained suspected images of child pornography. IT2 R traced the folder's source to "MAYO-PC," and then immediately reported what he found to his supervisor, Information Systems Technician First Class (IT1) M. IT1 M tried to find the "Rain" file on the LAN, but was unable to do so. IT1 M then notified the appellant's supervisor, Fire Controlman First Class (FC1) McC that the appellant's computer may contain child pornography.

FC1 McC testified during the suppression hearing that he felt a "moral imperative" to investigate the situation. He found the appellant's laptop in the division office where the

---

[1] The PTA included a specially negotiated provision allowing the appellant to plead guilty on the condition that he retains the right, on appeal, to challenge the military judge's denial of his motion to suppress. The military judge approved the conditional plea at trial.

2

appellant worked.  The laptop was password protected, so he asked another member of the crew who had the password to grant him access to the computer.  FC1 McC proceeded to search the appellant's laptop until he found images of suspected child pornography.

Soon thereafter, FC1 McC provided the laptop "up to the chain of command."[2]  The commanding officer (CO) was then apprised of the situation; without viewing the laptop, he immediately ordered it returned to the appellant so he could delete any pornographic images from his machine.  In accordance with the CO's order, the laptop was returned to the appellant that same day.

The CO then convened a preliminary investigation and, after reviewing statements taken from IT1 R and FC1 McC, he directed that the appellant's living and workspaces be searched to retrieve the returned laptop.  This occurred approximately four days after the computer was first returned.  After Lieutenant Junior Grade P and Sonar Technician Surface Second Class B advised the appellant of his rights, the appellant consented to a search of his living and work spaces to locate the laptop.  Concurrently, the CO had executed a command authorization for the search and seizure of the appellant's personal laptop.

The next day, the Naval Criminal Investigative Service (NCIS) assumed investigative responsibility over the case.  After issuing a cleansing warning, NCIS agents sought the appellant's permission to conduct an additional search of his living and work spaces.  The appellant again consented to a search.  NCIS also obtained a second search authorization from the CO for the laptop and other personal electronics that same day based on affidavits from both IT2 R and FC1 McC.

In a pretrial motion, the appellant moved to suppress all evidence obtained from his laptop arguing that FC1 McC's warrantless search and seizure of his laptop was unlawful.  At trial, the military judge denied the appellant's motion determining: 1) that even if FC1 McC's search was unlawful, the subsequent return of the computer dispelled any taint that would preclude consent for future searches; and 2) that the evidence

_____
2. Record at 31.

found on the appellant's laptop would have been inevitably discovered based on IT2 R's statement alone.  The military judge's ruling, Appellate Exhibit XII, included extensive findings of fact and conclusions of law.

Additional facts necessary for the resolution of this AOE are included below.

## Standard of Review

We review a military judge's decision to deny a motion to suppress under an abuse of discretion standard.  In doing so, we "'consider the evidence "in the light most favorable to the" prevailing party. '"  *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)) (additional citations omitted).  We review the military judge's "factfinding under the clearly-erroneous standard and [his] conclusions of law under the *de novo* standard."  *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995) (citations omitted).  We will find an abuse of discretion only if the military judge's "findings of fact are clearly erroneous or his conclusions of law are incorrect."  *Id.*

## Admissibility of Evidence Derived from the Laptop

The military judge found that even if FC1 McC's search was unlawful, the subsequent return of the appellant's laptop dispelled any taint that may have been caused by FC1 McC's actions. We agree and find the military judge's findings of fact are supported by the record and his legal conclusions properly applied those facts to the law.

"Evidence derivative of an unlawful search, seizure, or interrogation is commonly referred to as the 'fruit of the poisonous tree' and is generally not admissible at trial." *United States v. Conklin*, 63 M.J. 333, 334 (C.A.A.F. 2006) (footnote omitted).  "[G]ranting of consent to search may sufficiently attenuate the taint of a prior violation." *Id.* at 338.  "The threshold question is whether consent is voluntary, without influence of the prior unlawful search." *United States v. Dease*, 71 M.J. 116, 122 (C.A.A.F. 2012)*; see also Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (finding that the key issue is whether the evidence sought to be suppressed was found

4

"by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint") (citation and internal quotation marks omitted). "To determine whether the defendant's consent was an independent act of free will, breaking the causal chain between the consent and the constitutional violation, we must consider three factors: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and the flagrancy of the initial misconduct." *Conklin*, 63 M.J. at 338-39 (citation and internal quotation marks omitted); *see also Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

In applying the three-prong test to the facts of this case, the military judge found that all three factors favor the Government. First, weighing the temporal proximity of the unlawful conduct and the consent, the facts indicate that four days elapsed between when the appellant learned of FC1 McC's search and when he was asked to consent to the first permissive search. Four days, especially in light of the context of the return, was sufficient for the appellant to be freed from the pressure to yield to the requests of the command and NCIS when they sought permission to search his spaces and belongings. *Cf. Conklin*, 63 M.J. at 339 (finding that three hours was not sufficient to yield the requisite voluntariness for consent). Additionally, when the laptop was first returned to the appellant, he was instructed to delete the images. At that point, the CO had no plan for further investigation.

Second, the military judge found, and this Court agrees, that the intervening circumstances were sufficient to remove the taint from FC1 McC's actions. When FC1 McC initially reported that he found child pornography on the appellant's laptop, the CO declined to keep the laptop until he had an opportunity to review IT2 R's affidavit explaining how he found the child pornography on the appellant's laptop. Only after reviewing IT2 R's affidavit was the CO persuaded to initiate a more formal investigation and involve NCIS. This strongly implies that the CO's motive to search and seize the appellant's laptop was not based on FC1 McC's observations, but rather those of IT2 R – the Sailor who first discovered the images. Further, the record

5

indicates that the CO and NCIS would have investigated the allegations on the statement of IT2 R alone.

Finally, turning to the third factor — flagrancy of the illicit conduct, we examine the actions of FC1 McC. We find nothing in the record to establish that FC1 McC acted with an eye towards prosecution, or with the intent to bypass acceptable investigatory procedures. Further, the CO's actions when presented with the laptop and statement of FC1 McC, convince us that the command did not exploit the fruits of FC1 McC's search. Instead, upon hearing the allegations brought by FC1 McC, the CO attempted to cure any infringement on the appellant's rights by returning the laptop to the appellant with instructions to the appellant to delete the child pornography.

## Inevitable Discovery

In this case, the military judge also concluded that even if the original search by FC1 McC was unlawful, the images of child pornography would have inevitably been discovered through the information provided by IT2 R who provided the file names and description of the images he found on the appellant's laptop. We agree.

The inevitable discovery doctrine "allow[s] admission of evidence that, although obtained improperly, would have been obtained by another lawful means." *United States v. Wallace*, 66 M.J. 5, 10 (C.A.A.F. 2008) (citing *Nix v.* Williams, 467 U.S. 431, 444 (1984)); *see also* MILITARY RULE OF EVIDENCE 311(b)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) (stating that "[e]vidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made"). When routine procedures of a law enforcement agency would have discovered the same evidence, the inevitable discovery rule applies even in the absence of a prior or parallel investigation. *See United States v. Owens*, 51 M.J. 204, 210-11 (C.A.A.F. 1999).

Here, we agree with the military judge that the inevitable discovery doctrine applies. The evidence established that there was sufficient information outside of the search and statement of FC1 McC to conclude that probable cause existed for both

6

command authorized searches.  MIL. R. EVID. 315(f)(2) provides that "[p]robable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or in the person to be searched."  "When a commander is asked to authorize a search, the question is 'whether, given all the circumstances set forth in the affidavit before him, . . .a fair probability' exists that the suspected evidence will be found in the place to be searched." *Owens*, 51 M.J. at 211 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

We find that under the facts of this case, the military judge did not abuse his discretion in ruling that the images of child pornography derived from the appellant's laptop were admissible.  We agree with the military judge that: 1) any taint attributed to FC1 McC's search and seizure of the appellant's laptop was dispelled by its return to the appellant; and 2) the images of child pornography would have been inevitably discovered based on IT2 R's affidavit alone.

## Conclusion

Accordingly, the findings and the sentence as approved by the CA are affirmed.


For the Court



R.H. TROIDL
Clerk of Court

7