# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––

**No. ACM S32528**

––––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Jeremie MILAM**
Airman First Class (E-3), U.S. Air Force, *Appellant*

––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 5 December 2019

––––––––––––––––––

*Military Judge:* Ryan A. Hendricks.

*Approved sentence:* Bad-conduct discharge, confinement for 2 months, hard labor without confinement for 13 days, and reduction to E-1. Sentence adjudged 23 March 2018 by SpCM convened at Shaw Air Force Base, South Carolina.

*For Appellant:* Major Christopher C. Newton, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges*.

Judge LEWIS delivered the opinion of the court, in which Senior Judge MINK and Judge D. JOHNSON joined.

––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

––––––––––––––––––

LEWIS, Judge:

A special court-martial composed of officer members convicted Appellant, contrary to his pleas, of two specifications of wrongful use of a controlled substance (cocaine and marijuana), in violation of Article 112a, Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 912a.[1,2] The court members sentenced Appellant to a bad-conduct discharge, confinement for two months, hard labor without confinement for three months, reduction to the grade of E-1, and a reprimand. The convening authority reduced the hard labor without confinement to 13 days, disapproved the reprimand, and approved the remainder of the adjudged sentence.[3,4]

Appellant raises one assignment of error that the military judge abused his discretion when he denied a motion to suppress the results of his urinalysis.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The convening authority withdrew and dismissed one specification of wrongful use of marijuana after the military judge granted the Defense's motion to suppress a urinalysis sample collected from Appellant pursuant to a command policy on reinspection under *United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990). The military judge concluded the reinspection policy did not apply as Appellant consented to the first urinalysis sample rather than being selected as part of a random inspection. The military judge also found that inevitable discovery and the good faith exception were inapplicable and that appreciable deterrence to investigators warranted exclusion of the second urinalysis.

[3] The staff judge advocate recommended the convening authority reduce the sentence as was done to remedy an error after Appellant was wrongfully ordered to start his hard labor without confinement before the convening authority took action and ordered that portion of the sentence executed. *See* Article 57(c), UCMJ, 10 U.S.C. § 857(c). Appellant completed 13 days of hard labor without confinement before discovery of this error.

[4] Trial defense counsel's clemency letter incorrectly stated the convening authority had "sole discretion . . . to set aside findings of guilt and to reduce an adjudged court-martial sentence." The addendum to the staff judge advocate's recommendation (SJAR) did not address this misstatement of the law by defense counsel. *See United States v. Zegarrundo*, 77 M.J. 612 (A.F. Ct. Crim. App. 2018), *rev. denied*, __ M.J. __ , No. 19–0407, 2019 CAAF LEXIS 741 (C.A.A.F. 8 Oct. 2019). We note the SJAR itself correctly stated that the convening authority had no power to dismiss the findings of guilt and no power to disapprove the bad-conduct discharge. *See* Article 60(c)(3)(B), (c)(4)(A), UCMJ, 10 U.S.C. § 860(c)(3)(B), (c)(4)(A). We find no colorable showing of possible prejudice from trial defense counsel's misstatement of the law as it incorrectly informed the convening authority he had more, rather than less, discretion than he actually had. *See United States v. Lamica*, No. ACM 39423, 2019 CCA LEXIS 257, at *16 n.4 (A.F. Ct. Crim. App. 14 Jun. 2019) (unpub. op.), *rev. denied*, __ M.J. __, No. 19–0410, 2019 CAAF LEXIS 765 (C.A.A.F. 22 Oct. 2019); *United States v. Ten Eyck*, No. ACM 39188, 2018 CCA Lexis 193, *6–8 (A.F. Ct. Crim. App. 17 Apr. 2018) (unpub. op.), *rev. denied*, __ M.J. __, No. 18–0275, 2018 CAAF LEXIS 412 (C.A.A.F. 19 Jul. 2018).

First, Appellant argues that the military judge abused his discretion when he determined that Appellant's consent to the urinalysis was voluntary. Second, even if Appellant's consent was voluntary, Appellant argues the military judge should have suppressed the urinalysis results as derivative evidence from an earlier constitutional violation of his Fifth Amendment rights.[5] We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

In November 2017, security forces investigators at Shaw Air Force Base (AFB), South Carolina, received notification that a urinalysis of Staff Sergeant (SSgt) MP tested positive for a metabolite of cocaine. Investigators promptly interviewed SSgt MP under rights advisement pursuant to Article 31, UCMJ, 10 U.S.C. § 831. SSgt MP agreed to answer questions about his positive drug test and admitted receiving cocaine from civilian friends and using it on multiple occasions. SSgt MP denied knowing military members who used illegal drugs but told investigators that Appellant was the "only person he really hangs out with" as they shared common interests in amateur disc jockeying and smoking various types of tobacco with a hookah. In addition to their common off-duty interests, both SSgt MP and Appellant were assigned to the same squadron.

Investigator MR, a staff sergeant in the Air Force, decided to interview Appellant immediately. To facilitate this interview, Appellant's first sergeant picked up Appellant at the squadron and drove him to the security forces building. Appellant waited in a classroom until Investigator MR was ready to interview him. After about 15 minutes of waiting, Appellant saw SSgt MP walk out of the investigations section with the first sergeant. Investigator MR, wearing his military uniform with his staff sergeant rank visible, told Appellant to come with him to the interview room.

Appellant's interview with Investigator MR lasted less than 15 minutes. At the beginning, Investigator MR took Appellant's military identification card. Substantively, the interview began with a focus on SSgt MP's drug involvement. Appellant denied knowing anything about SSgt MP using illegal drugs. After this line of inquiry, Investigator MR switched his focus to Appellant's potential use of illegal drugs. Despite the shift in focus, Investigator MR did not read Appellant his rights under Article 31, UCMJ.

It is undisputed that Investigator MR asked Appellant to consent to a urinalysis and to a search of his vehicle and dormitory room. Appellant agreed, and Investigator MR retrieved and filled out a consent form (AF IMT 1364,

---

[5] U.S. CONST. amend. V.

*Consent for Search and Seizure*). Appellant initialed in multiple places on the consent form and signed granting consent. While no evidence of illegal drug involvement was found in Appellant's vehicle or dormitory, his urine tested positive for metabolites of cocaine and marijuana above the Department of Defense cutoff levels for each drug.

At trial, the parties disputed whether Investigator MR asked Appellant whether he used cocaine prior to asking him for consent. According to Appellant, Investigator MR directly asked this question, and Appellant denied using cocaine. Investigator MR denied asking the question and noted that his report of investigation made no mention of the question or of Appellant's denial.

One month before trial, Appellant filed a motion to suppress his urinalysis results arguing that his consent was not provided voluntarily. The Defense posited that Appellant's rights were violated when he was subjected to custodial interrogation by Investigator MR without being advised of his rights and without counsel being present in violation of the Fifth Amendment. In essence, the Defense asserted this prior rights violation contributed to a coercive and intimidating environment which along with restrictions on Appellant's liberty meant that Appellant only passively acquiesced to the color of authority when he signed the consent form. In opposition, trial counsel argued no rights violation occurred and that objectively and based on the totality of the circumstances, the consent was "perfectly reasonable" without coercion or defect.

The parties agreed the correct framework for determining voluntariness of consent included an analysis of the six non-exhaustive factors adopted by the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Wallace*, 66 M.J. 5, 9 (C.A.A.F. 2008). The military judge used these factors as a framework for his oral ruling. We address each of the six factors in our analysis below, but provide a general summary of the military judge's ruling here.

At the outset, the military judge found Investigator MR asked Appellant "directly whether he used illegal substances." The military judge concluded Appellant was "in custody" at this time and suffered a "clear violation" of his Fifth Amendment rights. To remedy this violation, the military judge *sua sponte* suppressed "all statements made by [Appellant] to Security Forces investigators." Turning to the voluntariness of the consent, the military judge determined:

> Based upon the totality of the circumstances, [Appellant] did feel pressured to give consent, but the government has established by clear and convincing evidence that [Appellant]'s consent to provide the urinalysis was made freely and voluntarily, despite the coercive environment in which it was made. [Appellant] was

aware that he could have consented or refused to provide his urine. Similarly, based upon the facts presented, objectively, a reasonable person similarly situated would have understood the words spoken to him, and the words he himself read on the [AF IMT] 1364.

The military judge admitted the urinalysis results and the court members found Appellant guilty of using cocaine and marijuana.

On appeal, Appellant first asserts the military judge erred by applying two of the six *Wallace* factors in the Government's favor and by concluding that Appellant's consent was voluntary. The Government disagrees and argues we should find the military judge did not abuse his discretion when he determined Appellant's consent to search was voluntary under the totality of the circumstances.

Alternatively, Appellant claims that even if his consent was voluntary, we should find the urinalysis results were derivative evidence or "fruit of the poisonous tree" from his illegal interrogation. *See United States v. Conklin*, 63 M.J. 333 (C.A.A.F. 2006). The Government disagrees arguing the failure to provide a rights advisement either had no bearing on, or was too attenuated from, Appellant's consent to search to require suppression.

## II. DISCUSSION

### A. Voluntariness of the Consent

#### 1. Law

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). The military judge's findings of fact are reviewed for clear error, but his conclusions of law are reviewed de novo. *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015) (citation omitted). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citation omitted). However, "[a] military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). "[I]n reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party." *United States v. Eppes*, 77 M.J. 339, 344 (C.A.A.F. 2018) (alteration in original) (quoting *United States v. Macomber*, 67 M.J. 214, 219 (C.A.A.F. 2009)), *cert. denied*, __ U.S. __, 139 S. Ct. 617 (2018).

5

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

"Searches conducted [pursuant to] a warrant or authorization based on probable cause are presumptively reasonable[,] whereas warrantless searches are presumptively unreasonable unless they fall within a few specifically established and well-delineated exceptions." *United States v. Hoffmann*, 75 M.J. 120, 123–24 (C.A.A.F. 2016) (internal quotation marks omitted) (quoting *United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014)). Consent is a specifically established exception to both the warrant and probable cause requirements of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "Property . . . may be seized with consent consistent with the requirements applicable to consensual searches under Mil. R. Evid. 314." Mil. R. Evid. 316(c)(3). "To be valid, consent must be given voluntarily. Voluntariness is a question to be determined from all the circumstances." Mil. R. Evid 314(e)(4). "The prosecution must prove consent by clear and convincing evidence." Mil. R. Evid. 314(e)(5).

"The test for voluntariness is whether the consent was Appellant's own essentially free and unconstrained choice or was her will overborne and her capacity for self-determination critically impaired." *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (citation and internal quotation marks omitted). "Consent is a factual determination, and a military judge's findings will not be disturbed on appeal unless unsupported by the evidence or clearly erroneous." *United States v. Piren*, 74 M.J. 24, 28 (C.A.A.F. 2015) (citation and internal quotation marks omitted).

We focus on six non-exhaustive factors to assist in analyzing the voluntariness of a consent to search:

> (1) the degree to which the suspect's liberty was restricted; (2) the presence of coercion or intimidation; (3) the suspect's awareness of his right to refuse based on inferences of the suspect's age, intelligence, and other factors; (4) the suspect's mental state at the time; (5) the suspect's consultation, or lack thereof, with counsel; and (6) the coercive effects of any prior violations of the suspect's rights.

*Wallace*, 66 M.J. at 9 (citations omitted); *see Olson*, 74 M.J. at 134.

**2. Analysis**

Appellant claims the military judge erred in assessing the third and fourth *Wallace* factors and in his ultimate conclusion that Appellant's consent was voluntary. We are not persuaded. As consent is based on the totality of the circumstances, we address the military judge's findings for each factor.

### a. Restriction on Liberty

The military judge found Appellant's liberty was restricted by persons in authority beginning with the first sergeant who escorted Appellant to the security forces building. The military judge concluded Appellant ceded to authority as he did not have a real choice whether to go with his first sergeant. The military judge determined the restriction on Appellant's liberty continued when Investigator MR directed Appellant to come with him and that Appellant was not free to leave at any time. These findings are not clearly erroneous. We also note that Investigator MR's decision to keep Appellant's military identification card for the duration of the interview and beyond was another indication that Appellant was not free to leave.[6]

### b. Presence of Coercion or Intimidation

The military judge found no overt coercion or intimidation. However, he did find an atmosphere that was coercive and intimidating. The military judge looked, *inter alia*, at the location, military ranks involved, and restrictions on liberty and property and found this atmosphere affected Appellant's inclination to refuse consent. These findings are not clearly erroneous.

### c. Suspect's Awareness of His Right to Refuse

The military judge determined that Appellant was a 21-year-old airman first class with one year and seven months in the United States Air Force at the time he consented. The military judge found Appellant signed a consent form that highlighted he had the right to consent or to refuse to consent. The military judge concluded that Appellant read, comprehended the meaning of the words, and had no questions prior to acknowledging his right to refuse consent. These findings are not clearly erroneous.

Appellant claims the military judge should have found his age, rank, and the circumstances surrounding the consent impacted his awareness of his right to refuse to consent. According to Appellant, the stress and heavy weight of the circumstances surrounding the giving of consent severely impacted Appellant's awareness of his right to refuse. We are not persuaded.

---

[6] Investigator MR kept Appellant's military identification card from the beginning of the interview until he handed it to the drug testing program manager.

Appellant testified for the limited purpose of his motion to suppress. He admitted he reviewed the consent form, and he knew the form indicated he had the right to refuse to consent. When asked what that meant to him, Appellant answered, "It meant that I could refuse." While Appellant also testified that he "felt like [he] had to comply" this does not affect his "awareness" of his right to refuse consent. The military judge's finding that Appellant was aware of his right to refuse is well supported by the record.

### d. Suspect's Mental State

The military judge found "the facts presented do not establish that [Appellant]'s mental state interfered with his ability to make a rational decision." This finding of fact is not clearly erroneous.

Appellant admits he had no mental infirmity, but claims he felt "attacked" at the time he gave consent. He asserts that instead of a clear conscience, he felt the weight and pressure of the circumstances and this certainly impacted his mental state. Again, we are not persuaded.

Appellant's written motion at trial provided ample explanation for the military judge's finding of fact. In that motion, trial defense counsel wrote "[t]here is no evidence, at this point, to suggest [Appellant]'s mental state interfered with his ability to make a rational decision." We observe no change in the Defense's position during oral argument. The senior trial counsel pointed this out, arguing, "[t]he mental state, even the defense in their motion says there's nothing wrong with his mental state. It's clear from his demeanor there was no undue stress or anything else going on in his life." The military judge's finding that Appellant's mental state did not interfere with his ability to make a rational decision is well supported by the record.

### e. Consultation with Counsel

The military judge found Appellant did not consult with counsel prior to or throughout his questioning because he was not informed that he was a suspect and was not advised of his right to counsel. This finding of fact is not clearly erroneous.

### f. Coercive Effects of Prior Violations

The military judge found the lack of a rights advisement "troubling" under this factor. As stated above, the military judge ruled Appellant suffered a "clear violation" of his Fifth Amendment rights. The military judge concluded the voluntariness of Appellant's consent could not be divorced from the coercive effects of law enforcement withholding from him that he was indeed a suspect. The military judge also weighed Investigator MR's decision to keep Appellant's military identification card under this factor. We find nothing clearly errone-

ous about the military judge's underlying findings of fact. We also find the military judge did not improperly apply the law on the Fifth Amendment and Article 31, UCMJ. The military judge's ruling that a Fifth Amendment rights violation occurred was within the permissible range of choices available to him based on the facts and applicable law.

### g. Totality of the Circumstances

The military judge concluded based on the totality of the circumstances that Appellant did feel pressured to give consent, but that the Government established by clear and convincing evidence that his consent was made freely and voluntarily despite the coercive environment. The military judge objectively determined a reasonable person, similarly situated, would have understood the words spoken to him and the words he read on the AF IMT 1364.

Appellant asserts the military judge's findings on the six *Wallace* factors do not support his overall conclusion that consent was voluntary. Appellant argues the military judge found in Appellant's favor on "the most important *Wallace* factors." Appellant notes the restriction on liberty, coercion and intimidation, lack of consultation with counsel, and "most importantly" the rights violation all weigh in his favor. We agree with Appellant that the military judge weighed four of the six factors in his favor. We disagree that weighing four factors in Appellant's favor means the military judge's overall conclusion was an abuse of discretion.

We are unaware of any legal precedent that required the military judge to weigh any one of the *Wallace* factors more or less heavily than the other factors. The six factors provide a framework for analysis and are non-exhaustive. Ultimately, the military judge looked at the totality of the circumstances and found Appellant's consent voluntary. The military judge did not abuse his discretion by denying the motion to suppress and admitting the urinalysis results.

## B. Derivative Evidence

### 1. Additional Background

On appeal, for the first time, Appellant claims that even if his consent was voluntary, we should find the urinalysis results were derivative evidence or "fruit of the poisonous tree" from his illegal interrogation. *See Conklin*, 63 M.J. at 333. The Government argues that Appellant's consent to search was not derived from his responses to questioning and that Appellant's statements to law enforcement were ostensibly exculpatory rather than incriminating. We find

Appellant waived this issue because he failed to present this argument during motion practice before the military judge.[7]

### 2. Law

"Waiver can occur by either operation of law, or by the intentional relinquishment or abandonment of a known right." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (internal citations and quotation marks omitted). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citations omitted). When there is waiver of an issue, that issue is extinguished and may not be raised on appeal. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citation omitted).

Mil. R. Evid. 311(d)(2)(A) requires the Defense to make any motion to suppress or objection under this rule regarding evidence obtained from an unlawful search and seizure prior to the submission of a plea unless permitted by the military judge for good cause shown. "Failure to so move or object constitutes a waiver of the motion or objection." Mil. R. Evid. 311(d)(2)(A).

Two recent CAAF cases addressed the waiver provision of Mil. R. Evid. 311(d)(2)(A). First, in *United States v. Robinson*, the CAAF found waiver when trial defense counsel failed to raise an argument on the scope of the appellant's consent to search during a motion to suppress. 77 M.J. 303, 307 (C.A.A.F. 2018). The CAAF found Mil. R. Evid. 311(d)(2)(A) "unambiguously establishes that failure to object is waiver, and it is not a rule that uses the term 'waiver' but actually means 'forfeiture.'" *Id.* (citing *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017)). Second, in *United States v. Smith*, the CAAF cited its "unambiguous holding in *Robinson*" and "reiterate[d] that failure to object under [Mil. R. Evid.] 311 constitutes waiver, not forfeiture." 78 M.J. 325, 326 (C.A.A.F. 2019) (citing *Robinson*, 77 M.J. at 307).

### 3. Analysis

We closely reviewed the record of trial to see if Appellant raised derivative evidence as a grounds for suppression when he filed his motion at trial. We find no such reference in the ten-page written motion from the Defense. That motion contains five law sections: consent generally, test for voluntariness, Fifth Amendment rights violation, limited scope of consent, and inevitable discovery. We find no citation to the law on derivative evidence or "fruit of the

---

[7] In their briefs before this court, neither appellate counsel addressed whether the derivative evidence argument was waived under Mil. R. Evid. 311(d)(2)(A). We determined it unnecessary to specify this issue for briefing.

poisonous tree" in the Defense's motion, though they generally cite to Mil. R. Evid. 311(d) which contains the words "or evidence derived therefrom."

The assistant trial counsel's motion response contains one paragraph that mentions the law on suppression of derivative evidence:

> Evidence derivative of an unlawful search, seizure, or interrogation is commonly referred to as the "fruit of the poisonous tree" and is *generally* not admissible at trial. *Nardone v. United States*, 308 U.S. 338, 341 (1939) (emphasis added).

The Government made no further mention of the law regarding derivative evidence and did not analyze how it applied to the Defense's motion to suppress.

In oral argument, trial defense counsel argued extensively on the legal issues she articulated in her written motion. She made one reference to derivative evidence when she addressed whether appreciable deterrence existed under Mil. R. Evid. 311(a)(3) to require application of the exclusionary rule:

> Your honor, the evidence must be suppressed in total. This would clearly result in an appreciable deterrence as the rule requires of future unlawful searches and seizures. Because it's very clear that the law enforcement involved in this case need to be reminded that they need to absolutely respect our Airmen's constitutional rights. Because this whole test should be thrown out, Your Honor, we also ask that *all derivative evidence be thrown out which includes the second test from 22 November.*[8]

(Emphasis added). Senior trial counsel did not mention derivative evidence in her argument.

The military judge never ruled whether the urinalysis results were derived from Appellant's rights violation. He did not cite or analyze the United States Supreme Court precedent on suppression of derivative evidence such as *Brown v. Illinois*, 422 U.S. 590 (1975), or *Wong Sun v. United States*, 371 U.S. 471 (1963). The military judge did not cite or analyze the CAAF's precedent on this issue such as *Conklin* or *United States v. Khamsouk*, 57 M.J. 282 (C.A.A.F. 2002). We therefore have no ruling below on whether Appellant's consent, as an independent act of free will, broke "the causal chain between the consent and the constitutional violation." *See Conklin*, 63 M.J. at 338 (citation omitted).

---

[8] Appellant consented to provide his first urinalysis on 6 November 2017. His second urinalysis was ordered to be collected on 22 November 2017 after investigators learned his first sample tested positive for cocaine and marijuana. The military judge suppressed the second urinalysis results as we described in footnote 2.

We are convinced the military judge did not address this issue because trial defense counsel never raised it. We considered trial defense counsel's one passing reference to derivative evidence and find it insufficient to raise a "fruit of the poisonous tree" objection. Instead, we find this passing reference to be an attempt to utilize Appellant's second urinalysis—which was absolutely derivative evidence of his first urinalysis and improperly ordered—into the analysis of Mil. R. Evid. 311(a)(3)'s "appreciable deterrence" standard for Appellant's first urinalysis.

Similarly, we find unimportant that the Government referenced one case on "fruit of the poisonous tree" in the law section of their written motion. Neither the senior trial counsel nor the trial defense counsel referenced *Nardone* in their oral arguments. We conclude that this reference by the *Government* did not preserve the issue for the *Defense*. After considering all the matters raised in the Defense's motion to suppress, we find Appellant waived the issue that his consent was derivative or "fruit of the poisionous tree" from the earlier Fifth Amendment rights violation because he failed to present this issue to the military judge for a ruling.

Separately, we recognize our authority under Article 66, UCMJ, 10 U.S.C. § 866, to pierce a waiver in order to correct a legal error. *See United States v. Hardy*, 77 M.J. 438, 443 (C.A.A.F. 2018). We decline to exercise our Article 66(c) authority to pierce this waived issue as we see no legal error to correct.

Even assuming *arguendo* that Appellant preserved the derivative evidence issue, we again find the military judge did not abuse his discretion in admitting the first urinalysis for two reasons. First, Appellant's consent for search was not derived from the rights violation. Appellant made no incriminating statement that would have prodded Investigator MR to ask for consent for a urinalysis. Instead, the record of trial shows that Appellant's close friendship with SSgt MP was what spurred Investigator MR to spend investigative time and resources to determine if Appellant could also be a cocaine user. Investigator MR described asking for consent as a standard operating procedure to find the "truth" and to "see if there's anything [the witness is] not telling us." We find Investigator MR's decision to request consent was not derived from anything Appellant said. Second, we find Appellant's review, initials, and signature on the consent form that it was his "legal right to either consent to a search, or to refuse to give my consent" as analyzed above broke any causal chain that could arguably exist between the constitutional violation and the consent. *See Conklin*, 63 M.J. at 338.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court