*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Ethen D. BLACK, Private First Class
United States Army, Appellant

**No. 22-0066**

Crim. App. No. 20210310

Argued March 29, 2022—Decided August 25, 2022

Military Judge: Mark A. Bridges

For Appellant: *Captain Joseph A. Seaton Jr.* (argued); *Colonel Michael C. Friess, Major Joyce C. Liu*, *Captain Andrew R. Britt*, and *Jonathan F. Potter*, Esq.

For Appellee: *Captain Karey B. Marren* (argued); *Colonel Christopher B. Burgess, Lieutenant Colonel Craig J. Schapira,* and *Captain Dustin L. Morgan.*

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge MAGGS, and Senior Judge STUCKY joined. Judge SPARKS filed a separate dissenting opinion.

————————

Judge HARDY delivered the opinion of the Court.

Appellant loaned his cell phone to another soldier, Private First Class (PFC) Avery, so that he could make calls, send texts, play games, and watch YouTube while he served overnight guard duty. While using the phone, PFC Avery accidentally discovered potentially inappropriate images of fellow female soldiers. PFC Avery reported the images to the acting first sergeant, who conducted a more in-depth search of the phone and discovered child pornography. After an investigation by the Criminal Investigation Division (CID), the Government charged Appellant with possession of child pornography.

Prior to his court-martial, Appellant moved to suppress the evidence obtained from his cell phone, arguing that the acting first sergeant's actions were an unlawful government search conducted without a warrant or Appellant's consent.

The military judge granted Appellant's motion, and the Government filed an interlocutory appeal with the United States Army Court of Criminal Appeals (ACCA) which reversed. Appellant appealed the ACCA's decision to this Court, and we reverse again. The military judge did not abuse his discretion in holding: (1) PFC Avery lacked common authority to consent to the search of Appellant's phone; (2) the Government failed to prove that the evidence was subject to the inevitable discovery doctrine; and (3) Appellant's later voluntary consent to search the phone was not sufficiently attenuated from the unlawful search to cure that error.

## I. Background

At the time of his alleged offense, Appellant's unit was training at the Joint Readiness Training Center (JRTC) in Fort Polk, Louisiana. As part of his duties while at the JRTC, Appellant served a twelve-hour guard duty shift, after which he was relieved by a group of soldiers including PFC Avery, who were preparing to serve the twelve-hour overnight shift. Because PFC Avery's cell phone was broken, he asked to borrow Appellant's cell phone for the duration of the night shift. Appellant loaned PFC Avery his cell phone, telling PFC Avery that he could use the phone to send text messages and make phone calls, play games, and watch YouTube, but making no other express statements about the scope of PFC Avery's permission to use the phone. Before leaving the phone in PFC Avery's possession, Appellant wrote down his phone's passcode on the table. The passcode was sufficient to unlock the phone's home screen and to access all features of the phone relevant to this case.

Later during PFC Avery's night shift, a photo gallery notification appeared on the screen of Appellant's phone. While attempting to swipe the notification off the screen, PFC Avery inadvertently opened the photo gallery revealing multiple pictures of clothed female soldiers. The pictures appeared to PFC Avery and the other soldiers on guard duty to be focused on the women's buttocks and to have been taken without the women's knowledge or consent.

After the discovery of the potentially inappropriate photos, one of the soldiers called the acting first sergeant, Ser-

geant First Class (SFC) Manglicmot, to report a possible sexual harassment incident. SFC Manglicmot came to the guard station to assess the situation and asked to look at Appellant's phone so that he could verify what the soldiers had reported. PFC Avery unlocked the phone and handed it to SFC Manglicmot with the photo gallery open revealing the images of the clothed women. Suspecting that there might be further incriminating images on the phone, SFC Manglicmot exited the photo gallery and opened other photo galleries on Appellant's phone, eventually discovering child pornography. At that point, SFC Manglicmot closed the phone, returned it to PFC Avery, and instructed the soldiers to stop using it. SFC Manglicmot attempted to report the child pornography to his command but was unable to reach anyone until the next morning.

After SFC Manglicmot spoke to his command, he and CID agents detained Appellant, seized Appellant's phone, and transported Appellant to the CID office for questioning. Once there, a CID agent informed Appellant of his rights and that he was suspected of possessing, viewing, distributing, and manufacturing child pornography. Appellant declined to make a statement and invoked his right to an attorney, but nonetheless provided written consent for CID to seize and search his phone. After CID's search of Appellant's phone (and later his laptop) revealed suspected child pornography, the Government charged Appellant with one specification of possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018).

Prior to his court-martial, Appellant moved to suppress all evidence and derivative evidence obtained from the search of his cell phone. The military judge granted the motion, concluding that SFC Manglicmot conducted an unlawful search of Appellant's phone and that the evidence must be suppressed. As most relevant here, the military judge based his decision on three conclusions of law. First, that PFC Avery did not have common authority over Appellant's entire phone because Appellant loaned PFC Avery his phone for a limited period of time and for limited purposes. Second, that even if PFC Avery had common authority over the phone, he only provided limited consent for SFC Manglicmot to search the

one photo gallery PFC Avery had already seen and not to search the entire phone. Thus, when SFC Manglicmot exited that photo gallery and searched additional photo galleries, he exceeded the scope of PFC Avery's consent. And third, that Appellant's written consent to search the phone failed to cure the taint of SFC Manglicmot's initial, unlawful search.

After the Government moved for reconsideration based on the doctrine of inevitable discovery, the military judge further held that the Government failed to demonstrate the evidence from the phone would have been inevitably discovered absent SFC Manglicmot's illegal search. The military judge declined to vacate his order suppressing the evidence obtained from Appellant's cell phone, and the Government filed an interlocutory appeal pursuant to Article 62, UCMJ, 10 U.S.C. § 862.

On appeal, the ACCA reversed, concluding that the military judge abused his discretion by suppressing evidence obtained from Appellant's cell phone. *United States v. Black*, No. ARMY Misc. 20210310, 2021 CCA LEXIS 559, at *2, 2021 WL 4953849, at *1 (A. Ct. Crim. App. Oct. 22, 2021) (unpublished). Because this Court reviews the military judge's ruling directly in Article 62, UCMJ, appeals, *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017), we need not linger on the details of the ACCA's reasoning. In short, the ACCA held that PFC Avery had common authority over Appellant's cell phone—and Appellant therefore assumed the risk that PFC Avery would allow the Government to search it—because Appellant provided PFC Avery with access to the phone without placing any express restrictions or limitations on the phone's use. *Black*, 2021 CCA LEXIS 559, at *1, 2021 WL 4953849, at *1.

This Court granted review to answer the following question:

> Whether the Army Court erred in its abuse of discretion analysis by (1) creating a novel test for common authority, (2) failing to give deference to the military judge's findings, (3) comparing a modern cell phone to a traditional "container," and (4) finding error based on a difference of opinion.

*United States v. Black*, 82 M.J. 229 (C.A.A.F. 2022) (order granting review).

## II. Standard of Review

Although the granted issue focuses on the ACCA's analysis, this Court directly reviews the military judge's decision when presented with an interlocutory appeal. *Pugh*, 77 M.J. at 3. In such appeals, we review the evidence in the light most favorable to the prevailing party and are bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous. *Id.*

This Court reviews a military judge's decision to suppress evidence for an abuse of discretion. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017). An abuse of discretion occurs when the military judge either applied the law erroneously or clearly erred in making findings of fact. *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003). An abuse of discretion must be " 'more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous.' " *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)).

## III. Discussion

Properly stated, the question before this Court is whether the military judge abused his discretion when he granted Appellant's motion to suppress the evidence obtained from the search of Appellant's cell phone. For the reasons explained below, we hold that he did not.

### A. Common Authority

The Fourth Amendment protects against unreasonable searches and seizures such that ordinarily searches are prohibited absent a search warrant except for a " 'few specifically established and well-delineated exceptions.' " *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of those exceptions is when the Government obtains voluntary consent, which can be provided "either from the individual whose property is searched, or from a third party who possesses common authority" over that property. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted); *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007).

"The validity of the third party consent does not hinge on niceties of property law or on legal technicalities," *Rader*, 65 M.J. at 32 (internal quotation marks omitted) (citation omitted), but is instead determined by whether the third party has joint access or control of the property for most purposes.[1] *Id.*; *see also* Military Rule of Evidence (M.R.E.) 314(e)(2) ("A person may grant consent to search property when the person exercises control over that property."). The burden lies with the Government to prove by clear and convincing evidence that a third party has joint access and control to the degree that such control confers a right to consent to search. M.R.E. 314(e)(5). The degree of control a third party possesses over property is a question of fact. *Rader*, 65 M.J. at 33. Whether that control is sufficient to establish common authority is a question of law. *Id.*

The military judge concluded that the Government failed to establish by clear and convincing evidence that PFC Avery possessed common authority over Appellant's entire phone, such that he could consent to SFC Manglicmot's search of the additional photo galleries. He based this conclusion on his factual findings that Appellant only loaned his phone to PFC Avery for one night; that Appellant told PFC Avery that he could use the phone to send text messages and make phone calls, play games, and watch YouTube and that Appellant had no expectation that he would do anything else with the phone; and that Appellant never gave PFC Avery permission to look at his photographs.

The Government argues that the military judge abused his discretion when he concluded that PFC Avery did not have common authority over the entire phone based on the existence of implied—rather than express or actual—

---

[1] In *Rodriguez*, 497 U.S. at 187, the Supreme Court also held that *apparent* common authority can establish the proper basis for a consent search. A person has apparent common authority to consent to a search if investigators reasonably believe that the person has authority to consent to a search, even if the person does not actually have such authority. *Id.* at 188–89. This doctrine does not apply here because SFC Manglicmot knew before he accessed Appellant's phone that it did not belong to PFC Avery and had no reason to believe that PFC Avery had any relationship to the phone other than his possession of it at the time.

limitations on PFC Avery's use of the phone. The Government contends that that PFC Avery possessed common authority over Appellant's phone because "Appellant provided unlimited physical access to it, and placed no restrictions— verbal or electronic—over the folders inside." Because we are aware of no binding precedent that equates physical access with common authority or that requires express or actual restrictions on use, we disagree that the military judge misapplied the law.

Neither the Supreme Court nor this Court has ever held that the scope of a person's common authority over property is coextensive with that person's access to the property. If that were true, determining whether common authority existed would be trivial. The only question would be whether the person who consented to the search had access to the searched property. Under the Government's theory, a property owner would "assume the risk" that another person might provide consent to an unlimited search by law enforcement simply by giving that person limited, temporary possession over their property. Yet that is not how the analysis in common authority cases proceeds.

In *Rader*, this Court expressly rejected the idea that the owner of a computer that was also used by a third party could not limit the scope of the third party's access to certain applications or files. 65 M.J. at 34. And although the Court recognized that one way of restricting access was through the use of technological restraints such as passwords or encryption, we also acknowledged that courts should consider "whether the defendant otherwise manifested an intention to restrict third-party access." *Id.* (internal quotation marks omitted) (citation omitted). Accordingly, even though Appellant had not password protected or encrypted the photo galleries containing the child pornography, that does not mean that Appellant could not have excluded those galleries from the scope of PFC Avery's common authority.

We also disagree with the Government that it was a misapplication of the law for the military judge to conclude that Appellant had restricted PFC Avery's access to the phone without Appellant expressly telling PFC Avery what he was *not* allowed to do on the cell phone. In *United States v. Reister*,

this Court faced a similar question in a case where the defendant had invited a third party to stay in his apartment while he was away. 44 M.J. 409, 411 (C.A.A.F. 1996). A critical issue in the case was whether the third party's common authority over the apartment extended to the contents of a closed logbook that was located on a shelf in the apartment. *Id.* at 414. The Court noted that the evidence showed that the defendant placed "no express restrictions" on the third party's access to the apartment, yet—contrary to the Government's theory—that did not end the Court's analysis. *Id.* Instead, the Court observed that the "question remains . . . whether the logbook was in a place that was *impliedly off-limits* to [the third party]." *Id.* (emphasis added). If implied limitations could not define the scope of a third party's common authority, that question—and the Court's ensuing analysis—would have been irrelevant.

It is true that this Court has never been presented with a case where a military judge held that an implied restriction was sufficient to cabin a third party's authority over shared property, but we reject the Government's assertion that an implied restriction could never do so as a matter of law. Our common authority consent cases do not support such a conclusion, and that view would be inconsistent with the Supreme Court's guidance that the key consideration in assessing Fourth Amendment consent cases is reasonableness, rather than technical property interests. Thus the appropriate question is "what would the typical reasonable person have understood by the exchange" between Appellant and PFC Avery. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Georgia v. Randolph*, 547 U.S. 103, 110 (2006) (citing *Katz*, 389 U.S. at 352–53).[2]

---

[2] Although not a factor in this case, in *Randolph*, the Supreme Court further noted that widely shared social expectations carry "great significance" in determining reasonableness in Fourth Amendment consent cases. 547 U.S. at 111. We expect that social expectations with respect to cell phones may be an important and evolving consideration in future consent cases, given the unique nature of those devices. *See Riley v. California*, 573 U.S. 373, 393–95 (2014) (discussing the various privacy considerations associated with cell phones).

Here, the military judge weighed the sometimes conflict-ing testimony of Appellant and PFC Avery and specifically considered both what Appellant told PFC Avery and what he did not tell him. The military judge found that Appellant had manifested an intention to restrict PFC Avery's use of his phone for a limited time and for the limited purposes of mak-ing phone calls, sending text messages, playing games, and watching YouTube. Based on these factual findings, the mili-tary judge held that Appellant's manifested intention cabined PFC Avery's common authority over the phone. In reaching this conclusion, the military judge correctly stated the Gov-ernment's burden of proof and the test for common authority. This Court's precedent has recognized the possibility that an implied restriction may limit the scope of common authority, and the military judge did not misapply or misunderstand the law when he found that the facts in this case limited PFC Avery's control over Appellant's phone such that it did not rise to a level of joint access and control sufficient to pro-vide PFC Avery authority to consent to a search of all the phone's photo galleries.

Although we might have reached a different conclusion than the military judge in the first instance, we are mindful that there must be more than a mere difference of opinion to establish an abuse of discretion. The military judge's decision was not based on clearly erroneous facts, and it was not "ar-bitrary, fanciful, clearly unreasonable, or clearly erroneous." *Solomon*, 72. M.J. at 179 (internal quotation marks omitted) (citation omitted). The military judge did not exhibit an erro-neous view of the law, and he did not abuse his discretion in suppressing the evidence obtained from Appellant's phone.

## B. Inevitable Discovery

Because the military judge did not abuse his discretion in holding that PFC Avery did not have common authority to consent to the search, we must next consider whether the Government would have inevitably discovered the evidence obtained from Appellant's cell phone absent the illegal search. When the Government unlawfully obtains evidence, that evi-dence may still be admissible if "the evidence would have been obtained even if such unlawful search or seizure had not been made." M.R.E. 311(c)(2). To prevail under this doctrine, the Government must prove by a preponderance of the evidence

that at the time of the unlawful search, government agents were already taking actions or pursuing leads such that their simultaneous actions and investigations would have inevitably led to the discovery of the evidence even absent the unlawful conduct. *United States v. Dease*, 71 M.J. 116, 122 (C.A.A.F. 2012). This Court reviews a military judge's ruling on the application of the doctrine of inevitable discovery for an abuse of discretion. *Id.* at 121.

Here, the Government argues that the discovery of the child pornography on Appellant's phone was inevitable because—even without the unlawful search of Appellant's phone—the following events would have occurred: (1) SFC Manglicmot or Appellant's command would have reported Appellant to CID based solely on the pictures of the clothed women; (2) CID would have opened an investigation into Appellant's misconduct; and (3) that investigation would have resulted in a lawful search authorization for Appellant's cell phone that would have revealed the child pornography. This theory is not illogical, but the military judge concluded there was not enough evidence in the record for the Government to carry its burden.

Neither SFC Manglicmot nor Appellant's company commander testified that they would have reported the potentially inappropriate pictures of clothed women to CID or sought a search authorization for Appellant's phone absent the discovery of the child pornography. And later, when CID investigated Appellant and the contents of his cell phone after the unlawful search, CID made no effort to investigate the potentially improper clothed pictures, but instead exclusively focused on the child pornography. The Government offered no evidence suggesting that it is routine practice for CID to request search authorizations when a suspect has taken pictures of fully clothed women like those PFC Avery initially found on Appellant's phone. And although a CID agent testified that she would have investigated Appellant for possible Article 117a, UCMJ, 10 U.S.C. § 917a, or Article 120c, UCMJ, 10 U.S.C. § 920c, violations and sought a search authorization even without the discovery of the child pornography, the military judge found that her testimony was not credible based on her actual investigation and the fact that Appellant's al-

leged misconduct with respect to the nonconsensual photographs of clothed women did not qualify as an offense under either Article 117a, UCMJ, or under Article 120c, UCMJ.

Under these facts, the military judge did not abuse his discretion when he held the inevitable discovery doctrine did not apply. The military judge reasonably concluded that the Government did not prove by a preponderance of the evidence: (1) that the Government would have investigated Appellant based solely on images of the clothed women; or (2) that such an investigation would have resulted in a lawful search authorization for Appellant's phone.[3]

## C. Attenuation

After completing his twelve-hour guard duty shift and loaning PFC Avery his phone, Appellant returned to his tent to sleep. The following morning, SFC Manglicmot retrieved Appellant from his tent and escorted him to a waiting CID officer. The CID officer handcuffed Appellant, seized his cell phone, and transported Appellant to the CID office for questioning. After being informed of his rights, Appellant elected to remain silent and requested a lawyer but gave CID his consent to search his cell phone. All parties agree that Appellant's consent was voluntary.

Before the military judge, the Government argued that even if SFC Manglicmot's search of Appellant's phone was unlawful, the voluntary consent that Appellant gave to CID to search his phone the next day was sufficiently attenuated from SFC Manglicmot's illegal search that it cured the taint

---

[3] After the military judge granted Appellant's motion to suppress the evidence obtained from his cell phone, the Government requested reconsideration due to the fact that—unbeknownst to the Government trial counsel—Appellant faced Article 15, UCMJ, 10 U.S.C. § 815, nonjudicial punishment for violating Article 134, UCMJ, based on the photos of clothed women discovered by PFC Avery on Appellant's cell phone. Although this fact might have helped the Government establish that it was interested in investigating more than just the child pornography on Appellant's phone, even with the evidence of the Article 15 proceeding, it was not an abuse of discretion to conclude that the child pornography would not have inevitably been discovered. The evidence in the record does not clearly establish that the Government would have pursued nonjudicial punishment absent the child pornography investigation.

of that search. The military judge disagreed, concluding that all three factors from the test set forth in *Brown v. Illinois*, 422 U.S. 590 (1975), weighed in Appellant's favor. Before this Court, the Government now argues that the military judge abused his discretion by misapplying at least two of the *Brown* factors. Again, we disagree.

As correctly stated by the military judge, to determine whether a defendant's voluntary consent to a search is sufficiently attenuated from an earlier unlawful search, this Court assesses three factors: (1) the temporal proximity of the unlawful police activity and the subsequent consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *United States v. Conklin*, 63 M.J. 333, 338–39 (C.A.A.F. 2006) (adopting the three-factor test from *Brown*, 422 U.S. at 603–04). In applying the third factor, this Court has held that the misconduct need not be "outrageous" or demonstrate bad motive or intent by the government official. *United States v. Darnall*, 76 M.J. 326, 331 (C.A.A.F. 2017). It is sufficient that the misconduct be "unnecessary and unwise." *Conklin*, 63 M.J. at 339.

In his ruling on attenuation, the military judge drew parallels between the facts in this case and to those in this Court's decision in *Conklin*, 63 M.J. 333. In *Conklin*, this Court held that the accused's consent to search his computer was not sufficiently attenuated from an earlier unlawful search of that computer to cure the error. *Id.* at 340. In that case, the Court analyzed the three *Brown* factors as follows: (1) less than three hours elapsed between the illegal search and the consent; (2) there were no intervening circumstances despite the involvement of new agents because absent the illegal search there would have been no interest in the accused; and (3) although the government agents did not harbor bad motives, the Court held the agents' actions were "unnecessary and unwise" as well as "avoidable . . . and unlawful." *Id.* at 339. This Court concluded that each factor weighed in the accused's favor, and ultimately held that the causal connection between the illegal search and the accused's consent had not been broken. *Id.* at 340.

Given the similarities between the facts in this case and those in *Conklin*, we find no support for the Government's ar-

gument that the military judge abused his discretion by misapplying the *Brown* factors. First, with respect to the temporal proximity of the illegal search and the consent, in this case the delay was about twelve hours compared to less than three hours in *Conklin*. But even that minor difference is deceiving because SFC Manglicmot conducted the illegal search during the night shift and Appellant was arrested the following morning. Although more time passed between the illegal search and Appellant's consent in this case compared to *Conklin*, the relevant parties were asleep for much of that time.

Second, with respect to the presence of intervening circumstances, the Government admitted before the military judge that there were none, *see* Government Response to Defense Motion to Suppress Evidence at 13, *United States v. Black*, (U.S. Army Trial Judiciary, 4th Jud. Circ. Mar. 30, 2021) ("there were admittedly no intervening circumstances"), and the military judge agreed. Nevertheless, the Government now argues that the military judge misapplied the second *Brown* factor by applying the wrong legal standard. It would be passing strange for this Court to now hold that the military judge abused his discretion by accepting the Government's concession on this point.

But even without the Government's admission, we could not fault the military judge for applying the same reasoning that this Court applied in *Conklin*. In that case, this Court found that the second factor weighed in favor of the accused because the government agents "would not have been interested in talking to [the accused] but for the information relayed to them as a direct result of the unlawful search that had just taken place." *Conklin*, 63 M.J. at 339. Similarly, in this case, the military judge noted, "[t]he CID agents relied exclusively on the results of SFC Manglicmot's unlawful search and discovery of child pornography in conducting their investigation and asking for the accused's consent to search." Considering that this Court concluded that "[t]here were no intervening events or circumstances that would sever the causal connection" between the unlawful search and the accused's consent in *Conklin*, 63 M.J. at 339, the military judge did not abuse his discretion by coming to the same conclusion here.

Finally, with respect to the purpose and flagrancy of the official misconduct, the military judge's reasoning again tracked this Court's decision in *Conklin*. In *Conklin*, this Court noted that the illegal search of the accused's computer was the only factor that led directly to the government's request for the accused's consent and its subsequent search of his computer. *Id.* at 340. The Court held that although the unlawful search itself was not flagrant (even if it was avoidable and unwise), the Government's exploitation of the information obtained through that search was. *Id.* Similarly, the military judge in this case noted that SFC Manglicmot's unlawful discovery of child pornography on Appellant's phone provided the only basis for CID's investigation and its request for consent to search Appellant's phone. Although the military judge stated that the Government's actions were not malicious, he did conclude that they were "unwise, avoidable, and unlawful" like the Government's actions in *Conklin*.

Reviewing the military judge's analysis of the *Brown* factors, we cannot say that the military judge abused his discretion. The military judge's reasoning was not arbitrary, fanciful, or unreasonable. To the contrary, the military judge cited *Conklin*, 63 M.J. 333, our leading precedent with respect to attenuation, and faithfully applied the guidance provided by that case and other precedent. While we recognize that the Government argues that the facts in *Conklin* can be distinguished and that the reasoning in *Conklin* should have led the military judge to a different result, we view that as more of a difference of opinion than an abuse of discretion.

## IV. Conclusion

We hold that the military judge did not abuse his discretion when he held: (1) that PFC Avery lacked common authority to consent to a search of Appellant's phone; or (2) that neither the inevitable discovery doctrine nor the doctrine of attenuation could transform the contents of the unlawful search into admissible evidence. The decision of the United States Army Court of Criminal Appeals is reversed. The military judge's rulings with respect to Appellant's motion to suppress the evidence obtained from his cell phone (Appellate Exhibit VIII) and to the Government's motion for reconsideration of that motion (Appellate Exhibit XII) are affirmed. The record is returned to the Judge Advocate General of the Army

14

for remand to the military judge for further proceedings consistent with this opinion.

Judge SPARKS, dissenting.

I disagree with the majority's conclusions regarding both common authority to search and the question of attenuation and therefore dissent in their decision to uphold the military judge's ruling.

*Common Authority to Search*

Searches conducted without a warrant are presumptively unreasonable unless they fall within "a few specifically established and well-delineated exceptions." *United States v. Wicks,* 73 M.J. 93, 99 (C.A.A.F. 2014) (internal quotation marks omitted) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Individuals have a reasonable expectation of privacy in the contents of their cell phones and therefore cell phones may not be searched without probable cause and a warrant unless the search falls within one of these exceptions. *Id.* Voluntary consent from an individual possessing authority is one such exception to the Fourth Amendment protections against warrantless search. *United States v. Weston*, 67 M.J. 390, 392 (C.A.A.F. 2009).

Military Rule of Evidence (M.R.E.) 314(e)(1), states that "[e]vidence of a search conducted without probable cause is admissible if conducted with lawful consent." An individual can grant consent to search when that person "exercises control over" the property in question. M.R.E. 314(e)(2). In other words, consent to search can come from "a fellow occupant who shares common authority over the property." *Weston*, 67 M.J. at 392 (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974); *United States v. Gallagher*, 66 M.J. 250, 253 (C.A.A.F. 2008)). The government only needs to show proof that "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Matlock*, 415 U.S. at 171. Common authority consists of:

> [M]utual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the search.

*United States v. Rader*, 65 M.J. 30, 33 (C.A.A.F. 2007) (internal quotation marks omitted) (quoting *Matlock*, 415 U.S. at 171 n.7).

Whether a third party exercises control over a given property is a question of fact. *Id.* The military judge's findings of fact are not disturbed unless they are clearly erroneous or unsupported by the record. *Id.* (citing *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)). "Whether these facts rise to the level of joint access or control for most purposes is a question of law." *Id.* (internal quotation marks omitted) (citing *Reister*, 44 M.J. at 415).

In *Rader*, this Court determined that the appellant's roommate, who used the appellant's computer to play computer games and perform routine maintenance and whose own computer was joined to the appellant's by a local access network, possessed sufficient access and control to consent to a search of the computer. 65 M.J. at 31. Our evaluation included recognizing that the appellant did not communicate any restriction regarding access to his computer files to any of his roommates, that any understanding regarding restricted access to the appellant's computer was tacit and unclear, and that neither the computer nor any of its files were password protected. *Id.* at 34. We rejected the argument that the roommate did not have control over or authority to consent to a search of certain files within the computer simply because he only had permission to use the computer for a certain purpose. *Id.*

In the current case, the military judge determined that PFC (Private First Class) Avery did not possess common authority because there was no expectation by Appellant that PFC Avery would view anything other than the agreed upon materials. Appellant loaned his cell phone for one night with the understanding that PFC Avery would use the phone for texting, calling, viewing YouTube, and playing games. The military judge concluded that, under such circumstances, it would be unreasonable to conclude that PFC Avery had unfettered authority to use the phone and that Appellant lending his phone for the duration of the guard shift was "not the type of mutual use of property that establishes joint access or control for most purposes." At no point did the military judge discuss the factors this Court considered in *Rader*.

The Government argues, in line with the lower court decision, that the military judge abused his discretion because the facts supported the legal conclusion that PFC Avery did have unfettered access to and control of Appellant's phone. Appellant allowed PFC Avery to use his cell phone without any express restrictions and gave him a passcode which allowed for unlimited access to the contents. *United States v. Black*, No. ARMY Misc. 20210310, 2021 CCA LEXIS 559, at *17–18, 2021 WL 4953849, at *5 (A. Ct. Crim. App. Oct. 22, 2021) (unpublished). The Government also adopts the lower court's conclusion that the military judge erred in his interpretation of the law by focusing on the areas of the phone Appellant told PFC Avery he could use rather than on the lack of express restrictions on use. The lower court looked to *Rader* and its assertion that "in the personal computer context, courts examine whether the relevant files were password-protected or whether the defendant otherwise manifested an intention to restrict third-party access." 65 M.J. at 34 (quoting *United States v. Aaron*, 33 F. App'x 180, 184 (6th Cir. 2002)).

Both the Government and the lower court echoed the premise in *Rader* and *Matlock* that mutual use of property carries with it the understanding that one has "assumed the risk" that anyone with joint access might authorize a search. *Rader*, 65 M.J at 33; *Matlock* 415 U.S. at 171 n.7; *see also United States v. Basinski,* 226 F.3d 829, 834 (7th Cir. 2000) (stating that "where a defendant allows a third party to exercise actual or apparent authority over the defendant's property, he is considered to have assumed the risk that the third party might permit access to others, including government agents"); *United States v. Jackson*, 598 F.3d 340, 347 (7th Cir. 2010) (stating that "the third-party consent exception to the warrant requirement is premised on the assumption of risk concept"). Appellant would therefore have assumed the risks involved in lending out a cell phone on which he has stored illegal pornographic images.

I agree with the Government that the military judge's conclusion regarding common authority was an abuse of discretion. He erred in failing to weigh the factors this Court applied in *Rader* and in relying solely upon what Appellant told PFC Avery he could do with the phone. The military judge's

conclusion that the non-password-protected folders on Appellant's phone were off-limits because Appellant did not expect PFC Avery to use them hinges upon the argument we rejected in *Rader*, which involved a personal computer and therefore implicated similar extensive access to personal material. Appellant gave his cell phone to PFC Avery for a twelve-hour period and did not communicate any express restrictions. Given that, in their Article 39(a) Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2018), hearing testimony, Appellant said that he thought that PFC Avery promised he would only use the phone for the purposes discussed but PFC Avery was under the impression that he had full access to the phone, we can conclude that any understanding regarding restricted access was tacit and unclear. And, to the extent anything was password protected, Appellant provided PFC Avery with the passcode by writing it down on the table. When those *Rader* factors are incorporated into the analysis, I cannot help but conclude that Appellant allowed PFC Avery joint access and control and therefore assumed the risks involved with lending his cell phone and its illegal contents.

I do recognize two factors, the informal relationship between Appellant and PFC Avery and the limited time period during which PFC Avery shared use of the phone, which distinguish this case from the key cases establishing common authority cited by both the military judge and the lower court. Those cases involved a longer time period (three weeks of house-sitting in *Reister*, 44 M.J. at 411); a more intimate relationship between the players (such as mother and son in *Jackson*, 598 F.3d at 342–43, or husband and wife in *Weston*, 67 M.J. at 391); or ongoing shared use (such as the roommates in *Rader*, 65 M.J. at 31, and *Matlock*, 415 U.S. at 166). However, in *United States v. Crain*, the United States Court of Appeals for the Fifth Circuit determined that a defendant had authority to consent to the search of a car because he was a co-occupant of the borrowed vehicle at the time and had permission to drive it for a single night. 33 F.3d 480, 484 (5th Cir. 1994). The military judge did not explore this line of reasoning beyond stating that it was "not the type of mutual use property that establishes joint access or control for most purposes." I find nothing in our case law to indicate that handing over property to another person, giving him "full access and

control," and departing for a full twelve hours is not sufficient to establish common authority and the accompanying assumption of risk.

*Scope of Consent*

Though I am convinced that PFC Avery was able to consent to a search of Appellant's cell phone, I believe that the search performed by Sergeant First Class (SFC) Manglicmot was illegal because he exceeded the scope of PFC Avery's consent. "A consensual search is reasonable under the Fourth Amendment so long as it remains within the scope of consent." *Jackson,* 598 F.3d at 348 (citing *Michael C. v. Gresbach*, 526 F.3d 1008, 1015 (7th Cir. 2008)). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

The military judge concluded that, when PFC Avery handed over the phone with the photo gallery already opened and explained that he had viewed those photos, he was granting consent to search only that portion of the phone. SFC Manglicmot exceeded the scope of that consent when he chose to back out of the photo gallery and search other sections of the phone for child pornography due to his own suspicions of what might be on the phone. The military judge viewed the scope of consent as limited to viewing the photos of the female soldiers in the open gallery.

The Government argues that PFC Avery placed no limitations on his consent and therefore SFC Manglicmot was entitled to search other folders in the phone. In essence, PFC Avery gave him the phone to look at pictures and that made all pictures fair game. The federal cases cited by the Government in support of this argument involve physical closed containers, not electronic devices. For example, in *Jimeno* the container searched was a brown paper bag on the floor of a car. 500 U.S. at 250. In *Jackson*, the United States Court of Appeals for the Seventh Circuit ruled that, given consent by proper authority, "law enforcement may search anywhere within the general area where the sought-after item could be concealed." 598 F.3d at 348–49. But the container in question

5

was the side pocket of a computer case in which the police found a gun. *Id.* However, this Court has established that "[b]ecause of the vast amount of data that can be stored and accessed, as well as the myriad ways they can be sorted, filed, and protected, it is not good enough to simply analogize a cell phone to a container." *Wicks*, 73 M.J. at 102. In *Wicks*, we determined that the lower court erred in relying upon a container analysis when assessing whether the government's search of the appellant's cell phone exceeded a private search. *Id.* at 103. We noted that a cell phone that "can be linked to a vast amount of personal data, some readily accessible and some not" does not function like a static storage container, and that the contents of the appellant's cell phone were not readily exposed or subject to examination but required that the government sort through private information during its search.[1] *Id.* at 102–03. Given *Wicks*, the question of whether consent to search an open folder of a cell phone means consent to search other folders on that phone cannot be resolved by relying upon single closed container cases.

"The exclusionary rules for unlawful searches apply only to searches made by someone acting in a governmental capacity. Hence, the Fourth Amendment and the exclusionary rules are not implicated by a private search." *Reister*, 44 M.J. at 415 (citation omitted) (internal quotation marks omitted). SFC Manglicmot's search was performed on behalf of the Government. He was summoned by the soldiers because of his authority over them and he was clear prior to the search that he was concerned about a potential sexual harassment or Criminal Investigation Division (CID) situation. However, PFC Avery's search was premised upon the accidental opening of the photo gallery and his own personal curiosity. It was in no way conducted on behalf of the Government. *See Reister,* 44 M.J. at 415. Once any original expectation of privacy was overcome by PFC Avery's private search, the Government could use the now nonprivate information without violating the Fourth Amendment. *Id.* at 416 (citing *United States v. Jacobsen*, 466 U.S. 109, 117 (1984)). However, the Government

---

[1] *Wicks* involved three increasingly broad government searches, all of which this Court determined had exceeded their scope, culminating in the review of over 45,000 text messages. 73 M.J. at 101.

may not exceed the scope of the private search, including expanding it into a general search. *Wicks*, 73 M.J. at 100 (citing *Jacobsen*, 466 U.S. at 117–18). "Applying this to . . . cell phones, the scope of the private search can be measured by what the private actor *actually* viewed as opposed to what the private actor had access to view." *Id.*

The Government must prove lawful consent to search by clear and convincing evidence. M.R.E. 314(e)(5). Determining the scope of a consent to search requires an evaluation of the totality of the circumstances "including the interaction between the parties, the purpose of the search, and the circumstantial evidence surrounding the search." *United States v. Beckmann*, 786 F.3d 672, 679 (8th Cir. 2015).

Here, one of the soldiers with PFC Avery contacted SFC Manglicmot about a possible incident implicating the Army's Sexual Harassment/Assault Response and Prevention (SHARP) program and involving soldiers in their unit. *Black*, 2021 CCA LEXIS 559, at *3–4 2021 WL 4953849, at *1. SFC Manglicmot was concerned that the photos might involve a sexual harassment issue. When SFC Manglicmot arrived, PFC Avery told him about the four photos of members of the unit he had viewed. PFC Avery testified at the Article 39(a), UCMJ, hearing that he gave SFC Manglicmot the cell phone "to show him the pictures, so he would know [what] the whole situation was, so he could possibly take action, like actions that I couldn't take myself."

SFC Manglicmot looked at the photos and noted that they could be deemed sexual in nature. He then backed out of the open photo gallery containing the photos PFC Avery had viewed and began scrolling through other images. Upon seeing the other photos, particularly one that "zoomed in" on the buttocks of a child, SFC Manglicmot had an "inkling" that "maybe there was something else that was deeper, that we should know about" and "maybe there's more things here." So he exited that photo gallery folder entirely, began scrolling around, and noticed icons for other folders that seemed they could contain sexually inappropriate materials. SFC Manglicmot then opened them and discovered what he thought was child pornography. Only at that point did he give the phone back to PFC Avery and tell the soldiers to leave the phone there and not tell Appellant what they had seen.

The circumstances here indicate that PFC Avery never asked, told, or encouraged SFC Manglicmot to search the phone outside of the photo gallery containing the photos of the clothed female soldiers. He never mentioned child pornography or did anything to imply he thought Appellant might have child pornography on his phone. His only concern was a possible SHARP incident involving soldiers in their unit. SFC Manglicmot expanded the search to other folders because of his own "inkling." These facts do not establish by clear and convincing evidence that a reasonable person would assume PFC Avery consented to the expansive search performed by SFC Manglicmot. In addition, we must reconcile the assertion in *Wicks* that a government search cannot exceed what the private actor *actually* viewed. Here, PFC Avery, during his private search, actually viewed photos of clothed female soldiers. I therefore conclude that SFC Manglicmot exceeded the scope of PFC Avery's consent to search.

### Attenuation and the Exclusionary Rule

"Evidence derivative of an unlawful search, seizure, or interrogation is commonly referred to as 'fruit of the poisonous tree' and is generally not admissible at trial." *United States v. Conklin*, 63 M.J. 333, 334 (C.A.A.F. 2006) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). However, "[t]he granting of consent to search may sufficiently attenuate the taint of a prior violation." *Id.* at 338. Sometimes the link between the illegal search and the discovery of the evidence is "too attenuated to justify suppression." *Utah v. Strieff*, 579 U.S. 232, 235 (2016). Under the attenuation doctrine, "evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Id.* at 238 (internal quotation marks omitted) (quoting *Hudson v. Michigan*, 547 U.S. 586, 593 (2006)).

To evaluate whether consent to search is sufficiently attenuated from a Fourth Amendment violation, this Court has adopted the framework established by the Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975). *Conklin*, 63 M.J. at 338.

To determine whether the defendant's consent was an independent act of free will, breaking the causal chain between the consent and the constitutional violation, we must consider three factors: "(1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and the flagrancy of the initial misconduct." *Conklin*, 63 M.J. at 338–39 (citing *United States v. Hernandez*, 279 F.3d 302, 307 (2002)). "None of these three factors is dispositive of attenuating the taint of the original wrongdoing, but rather they are examined in aggregate to determine the effect of an appellant's consent." *United States v. Dease*, 71 M.J. 116, 122 (C.A.A.F. 2012) (citing *Brown*, 422 U.S. at 603–04).

I largely agree with the majority's application of the first two Brown factors and acknowledge that, arguably, they slightly favor Appellant. However, in this case, I do not find these first two factors to be determinative.

I part from the majority when it comes to the third *Brown* factor, which examines the Government's conduct. "The Supreme Court has identified this third factor as particularly important, presumably because it comes closest to satisfying the deterrence rationale for applying the exclusionary rule." *United States v. Khamsouk*, 57 M.J. 282, 291 (C.A.A.F. 2002) (internal quotation marks omitted) (citing *New York v. Harris*, 495 U.S. 14, 23 (1990)). Our case law has fleshed out our interpretation of "purpose and flagrancy." In *Conklin*, although we concluded that the government harbored no questionable motive or intent and were hesitant to call their actions flagrant, we decided that their "unwise, avoidable, and unlawful" conduct satisfied the third *Brown* factor. 63 M.J. at 339. In *United States v. Darnall*, we determined that it is not "necessary that the agent's conduct be outrageous for the third factor in *Brown* to apply" nor do we require evidence of "bad motive or intent" on the investigator's behalf. 76 M.J. 326, 331 (C.A.A.F. 2017).[2] Meanwhile, in deciding *Strieff*, the Supreme Court clarified that the third *Brown* factor was not

---

[2] In *Darnall*, we determined that law enforcement's overall investigation was hasty, flimsy, sloppy, and apathetic to such a degree that it "infringed inexcusably upon Appellant's Fourth Amendment rights." 76 M.J. at 332.

triggered by minor misconduct such as "an isolated instance of negligence that occurred in connection with a bona fide investigation" with no evidence of systemic or recurrent police misconduct. 579 U.S. at 242.

The degree of law enforcement misconduct factors heavily into any assessment of the application of the exclusionary rule. The exclusionary rule operates as a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Leon*, 468 U.S. 897, 906 (1984) (internal quotation marks omitted) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

> [T]he dissipation of the taint concept that the Court has applied in deciding whether exclusion is appropriate in a particular case attempts to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost.

*Id.* at 911 (internal quotation marks omitted) (quoting *Brown*, 422 U.S. at 609 (Powell, J., concurring in part)). In determining whether the exclusionary rule is warranted, a balance must be struck between "the public interest in determination of truth at trial and the incremental contribution that might [be] made to the protection of Fourth Amendment values." *Khamsouk*, 57 M.J. at 292 (alteration in original) (internal quotation marks omitted) (quoting *Stone v. Powell*, 428 U.S. 465, 488 (1976)). "[W]hen there is a Fourth Amendment violation, the exclusionary rule does not apply when the costs of exclusion outweigh its deterrent benefits." *Strieff*, 579 U.S. at 235. "The exclusionary rule applies only where it result[s] in appreciable deterrence for future Fourth Amendment violations and where the benefits of deterrence must outweigh the costs." *Wicks*, 73 M.J. at 104 (alteration in original) (internal quotation marks omitted) (quoting *Herring v. United States*, 555 U.S. 135, 141 (2009)).

The military judge determined that SFC Manglicmot's unlawful search and CID's failure to follow up on the circumstances of that initial search were "the type of law enforcement and official conduct that the exclusionary rule was

designed to deter." The Government, in contrast, argues that, because SFC Manglicmot was not a law enforcement officer, he understandably did not know his search of the phone might be illegal. He had the well-intentioned goal of seeing whether the photos might pose a problem suitable for CID investigation. The Government also emphasizes that the behavior of the investigators was not questionable in any other way.

The military judge's findings and conclusions regarding attenuation focus primarily on SFC Manglicmot's actions, including a lengthy footnote describing what SFC Manglicmot could have done instead of the search he did perform. However, I disagree that SFC Manglicmot's search rose to the level of purposeful or flagrant and believe the military judge abused his discretion in reaching this conclusion. SFC Manglicmot quite simply lacked the law enforcement training to understand the legal nuances of a permissible phone search. It is unrealistic to expect every acting SFC to have this knowledge. His actions appear to have been a good faith misunderstanding of the confines of the Fourth Amendment.

Nor am I convinced that CID's failure to inquire about the lawfulness of SFC Manglicmot's search was unwise, avoidable, or unlawful to such a degree that it merits application of the exclusionary rule. Even if the CID agents should have suspected that SFC Manglicmot's search might have been problematic, they were at worst negligent in failing to follow up on his mistake. The behavior of the investigators was not questionable in any other way. Appellant was read his rights, properly informed of the nature of the request for consent (that he was suspected of possessing child pornography), and properly informed that he was not required to give consent. Because Appellant did not know about the initial phone search, there is no concern that the CID agents tried to leverage that to obtain his consent. In addition, law enforcement simultaneously approached a magistrate to obtain a search authorization. *See Wicks*, 73 M.J. at 104 (considering both lack of evidence that a search authorization was pursued and the investigating officer's testimony that it was not her intention or practice to seek search authorization under the circumstances in determining that the exclusionary rule should apply). There is no indication of an attempt to intentionally circumvent Appellant's constitutional rights, nor do we have

the kind of sloppy and apathetic law enforcement process we encountered in *Darnall*. As such, I cannot conclude that what happened here was the "type of law enforcement activity we would certainly hope to deter" or that we "might well be encouraging rather than deterring it" by allowing admission of the evidence derived from this particular search. *Darnall,* 76 M.J. at 332 (citation omitted) (internal quotation marks omitted). This Court's duty to protect the Fourth Amendment values is not further served by application of the exclusionary rule in a case like this.

I therefore respectfully dissent.